Danny E. PAGE, Plaintiff–Appellant,

v.

CITY OF MONROE, Defendant–Appellee.

No. 01–1076.

United States Court of Appeals, Sixth Circuit.

Aug. 10, 2001.

Before KRUPANSKY, SUHRHEINRICH, and SILER, Circuit Judges.

Danny E. Page, an African–American Michigan citizen, appeals pro se a district court judgment dismissing his civil rights action filed pursuant to 42 U.S.C. §§ 1981, 1983 and 1985(3) and the Michigan Elliott–Larsen Civil Rights Act. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Counsel represented Page in the district court. The complaint alleged that Page had applied for a building permit in 1999 to renovate a building located at 1027/1029 East Third Street in the City of Monroe, Michigan. Upon inspection of the building, the City of Monroe found it to be a "dangerous building," and Page was given a list of repairs needed to save the building from demolition. The City then attempted to determine the owner of the building to either have the building demolished or the dangerous conditions abated. Ms. Anne Payne was found to be the last owner of record where she had purchased the property in 1979 and at a tax sale in 1984. The City then held a dangerous building hearing, to which Ms. Anne Payne and Page, among others, were invited. The hearing officer and City Council determined that the building required an additional inspection and, if the building could be renovated, the owner would have a chance to apply for and secure a building permit.

Upon completion of the second inspection, eight months after the first, a slightly longer list of needed repairs was provided to Page, and the City requested that Page provide proof of his legal interest in the property in order to obtain the necessary building permit. Page failed to provide such proof. The City then began the process of soliciting bids for the demolition of the structure because it had been deemed a "dangerous building" pursuant to Mich. Comp. Laws § 125.541; Mich. Stat. Ann. § 5.2891(21).

Thereafter, Page filed the instant action under 42 U.S.C. §§ 1981, 1983 and 1985, against the City of Monroe. He alleged that the denial of his application for a building permit was because of his race. Page also alleged that the defendant's actions deprived him of his civil rights under the Michigan Elliott–Larsen Civil Rights Act. The City of Monroe filed a motion for summary judgment and Page responded. After a November 16, 2000 hearing on the motion for summary judgment, the district court entered judgment for the defendant. This timely appeal followed.

Upon de novo review, *see Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997), we conclude that the district court properly granted summary judgment for the City of Monroe as there are no genuine issues of material fact and the City is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ In order to state a viable cause of action under both § 1981 and § 1983, Page must allege that a municipal policy or practice existed which caused the violation of his constitutional rights. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Page has adduced no evidence that such a policy or practice existed beyond his conclusory allegations that the City of Monroe "has clearly exhibited a pattern or practice of requiring much more from an African American attempting to renovate property and start a business in a majority white community than it has of a non-minority owner of property in the same area." The isolated and unhappy circumstances' leading to this suit do not support such a conclusion.

■ In any event, Page's equal protection claim must fail. Claims of discrimination under § 1981, § 1983, and the Michigan Elliott–Larsen Civil Rights Act apply the same standards. *See Daniels v. Bd. of Educ. of Ravenna City Sch. Dist.,* 805 F.2d 203, 207 (6th Cir.1986) (stating disparate treatment analysis also may be used in adjudicating race discrimination claims under sections 1981 and 1983); *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 69 (6th Cir.1985); *Meeka v. D & F Corp.,* 158 Mich.App. 688, 405 N.W.2d 125, 128 (1987). In order to prove discrimination under all three statutes, the plaintiff must show either that the defendant intentionally discriminated against him, or that he was treated differently from those with whom he was similarly situated, making an inference of discrimination permissible. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). In this case, the record is void of any instance where similarly situated non-African American business property owners were treated any differently. Accordingly, Page has not established an equal protection claim under § 1981, § 1983 or the Michigan Elliott–Larsen Civil Rights Act.

■ Finally, the district court properly granted summary judgment on Page's claim asserted under § 1985(3) because Page's § 1985(3) claim is premised upon mere conclusions and opinions. *See Gu-*

*tierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.1987). Page's conspiracy allegations are also barred by the "intracorporate doctrine," which provides that where all of the defendants are members of the same collective entity, there are not two separate people to form a conspiracy. *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. Of Educ.*, 926 F.2d 505, 510 (6th Cir.1991).

Accordingly, the district court's judgment is affirmed. Rule 34(j)(2)(C), Rules of the Sixth Circuit.